IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ANTHONY WHITFIELD and ROCHELLE RIBEIRO WHITE,** individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> **MEDGUARD ALERT, INC.** <br><br> *Defendant.* | Case No. <br> 3:26-cv-324 <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Anthony Whitfield ("Mr. Whitfield") and Rochelle Ribeiro White ("Ms. Ribeiro White") (collectively, "Plaintiffs") bring this Class Action Complaint and Demand for Jury Trial against Defendant MedGuard Alert, Inc. ("Defendant" or "MedGuard"), and allege as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiffs bring this action to enforce the consumer-privacy provisions of the TCPA alleging that MedGuard violated the TCPA by making telemarketing calls to Plaintiffs and other putative class members listed on the National Do Not Call Registry without their written consent.

## PARTIES

4. Plaintiff Anthony Whitfield is an individual residing in the Eastern District of Pennsylvania, in Delaware County.

5. Plaintiff Rochelle Ribeiro White is an individual residing in the District of Rhode Island.

6. Defendant MedGuard Alert, Inc. is a corporation incorporated in and having its principal place of business in Middletown, Connecticut.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8. This Court has general personal jurisdiction over MedGuard because the company has its headquarters and principal place of business in this District.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant resides in this district.

## BACKGROUND

**A.   The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

10. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

B. **The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.**

14. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

15. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

16. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

## FACTUAL ALLEGATIONS

17. Plaintiffs are, and at all times mentioned herein were, "persons" as defined by 47 U.S.C. § 153(39).

18. At no point did Plaintiffs consent to receiving telemarketing calls from Defendant prior to receiving the calls at issue.

19. Plaintiff Rochelle Ribeiro White's telephone number, (401) xxx-xxxx, is a residential, non-commercial cellular telephone number.

20. Ms. Ribeiro White uses her telephone number for personal, residential, and household purposes and not for business purposes.

21. Ms. Ribeiro White's telephone number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

22. Ms. Ribeiro White's telephone number has been listed on the National Do Not Call Registry since at least December 9, 2025.

4

23. Ms. Ribeiro White has never been a customer of Defendant MedGuard Alert, Inc. and never consented to receive calls from Defendant.

24. Despite this, on October 11, 2025, Ms. Ribeiro White received an automated telemarketing call from caller ID (401) 325-5279, which she rejected.

25. Upon information and belief, this telephone number is a "spoofed" number in that it is not actually assigned to any subscriber.

26. On October 14, 2025, Ms. Ribeiro White received another automated telemarketing call from caller ID (401) 325-7149, during which an artificial intelligence robot asked her a series of questions regarding purchasing a medical alert device.

27. Ms. Ribeiro White was eventually transferred to an individual, who was human, identifying himself as Alex Robinson who confirmed he was calling from the Defendant's company, and who attempted to sell her a medical alert device.

28. Upon information and belief, the 401-325-7149 telephone number is also a "spoofed" number in that it is not actually assigned to any subscriber.

29. Plaintiff Anthony Whitfield's telephone number, (267) xxx-xxxx, is a residential, non-commercial cellular telephone number.

30. Mr. Whitfield uses his telephone number for personal, residential, and household purposes and not for business purposes.

31. Mr. Whitfield's telephone number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

32. Mr. Whitfield's telephone number has been listed on the National Do Not Call Registry since September 17, 2025, which was prior to the calls at issue.

33. Mr. Whitfield has never been a customer of Defendant MedGuard Alert, Inc. and never consented to receive calls from Defendant.

34. Despite this, on October 8, 2025, Mr. Whitfield received an automated telemarketing call from caller ID (267) 927-4875, which he rejected.

35. Upon information and belief, this telephone number is a "spoofed" number in that it is not actually assigned to any subscriber.

36. On October 27, 2025, Mr. Whitfield received another automated telemarketing call from caller ID (267) 927-8846, during which he spoke with an individual identifying herself as "Mia." During that call, he was provided a callback number of (800) 716-1433, which connects to Defendant.

37. Indeed, the (800) 716-1433 telephone number is listed on the Defendant's website.

38. Upon information and belief, this 267-927-8846 telephone number is also a "spoofed" number in that it is not actually assigned to any subscriber.

39. The calls all came from the following spoofed numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | CNAM Available? | CNAM Result | Carrier (Spoofed) |
|---|---|---|---|
| 4013255279 | Y | WOONSOCKET RI | Bandwidth |
| 4013257149 | Y | WARREN, RI | Bandwidth |
| 2679274875 | Y | WARRINGTON PA | Onvoy |
| 2679278846 | Y | ALON COHEN | Bandwidth |

40. As the aforementioned chart shows, the CNAM transmitted by the ultimate telephone carriers provided CNAM functionality, but provided inaccurate CNAM functionality, since Defendant utilized "spoofing," or otherwise default settings, to make the calls appear to come from out of service names and numbers, instead of the Defendant's name and number.

41. Indeed, the Defendant appears to have spoofed several of the numbers, as will be revealed through discovery, to further hide its identity.

42. With respect to each of the numbers listed above, none of the numbers permit a caller to call the number and lodge a do not call request during regular business hours, because they are spoofed to unassigned phone numbers or do not connect at all. It is not possible to call any of those numbers back to lodge a Do Not Call request during regular business hours with the Defendant.

43. As evidenced by the foregoing, the calls placed to Plaintiffs were made for the purpose of marketing and selling medical alert systems.

44. The calls were unwanted, nonconsensual, and made without Plaintiffs' prior express consent.

45. Plaintiffs' privacy has been repeatedly violated by Defendant's telemarketing calls.

46. Plaintiffs never provided their telephone numbers to Defendant nor requested the calls.

47. Plaintiffs and the Class have been harmed by Defendant's unlawful conduct, including invasion of privacy, nuisance, annoyance, and harassment. The calls also occupied Plaintiffs' telephone lines, storage capacity, and bandwidth, rendering them unavailable for legitimate communications, including while driving, working, and performing other critical tasks.

## **CLASS ACTION ALLEGATIONS**

48. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

49. Plaintiffs bring this action on behalf of themselves and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of MedGuard's goods or services, and (3) at least one of which was

7

placed while the telephone number was on the National Do Not Call Registry for at least 31 days (4) within a 12-month period (5) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendant's or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request to Defendant during regular business hours, (4) within the four years prior to the filing of the Complaint.

**Robocall Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone or any other protected telephone service (3) from or on behalf of the Defendant (4) sent using the same, or substantially similar, pre-recorded messages used to contact the Plaintiffs.

50. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time for each Class, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

51. **Typicality**: Plaintiffs' claims are typical of the claims of other Class members in that Plaintiffs, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

52. **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiffs have no interests that conflict

with, or are antagonistic to those of, the Classes, and Defendant has no defenses unique to Plaintiffs.

53. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

   a. Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

   b. Whether Defendant called numbers on the National Do Not Call Registry;

   c. Whether Defendant sent calls using artificial or prerecorded voices;

   d. Whether Defendant sent calls using inaccurate caller ID information as prohibited by law;

   e. Whether Defendant should be held liable for violations committed on its behalf; and

   f. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiffs and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

54. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

55. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiffs satisfy the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

    a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

    b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

    c. Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

    d. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiffs and the National DNC Class)

56. Plaintiff Whitfield realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

57. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

58. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff Whitfield and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

59. These violations were willful or knowing.

60. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff Whitfield and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

61. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1601(e)
### (On behalf of Plaintiff and the Telemarketing Caller ID Class)

62. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

63. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

64. It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

65. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiffs and members of the Telemarketing Caller ID Class in a 12-month period, without proving a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours, as well as by using "spoofed" caller IDs that did not allow consumers to lodge a do-not-call request during regular business hours, as well as by transmitting inaccurate caller ID information.

66. These violations were willful or knowing.

67. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

68. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT III

**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(b)(1)(A)(iii) and/or (b)(1)(B)) on behalf of the Robocall Class**

69. Plaintiff Ribeiro White incorporates by reference the foregoing allegations as if fully set forth herein.

70. The Defendant violated the TCPA by sending or causing to be sent calls to the residential telephones and other protected telephones of Plaintiff Ribeiro White and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

71. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff Ribeiro White and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

72. Plaintiff Ribeiro White and Robocall Class members are entitled to an award of treble damages if the Defendant's actions are found to have been knowing or willful.

73. Plaintiff Ribeiro White and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendant from using a pre-recorded voice in the future, except for emergency purposes.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, respectfully request that the Court enter judgment against Defendant for:

A. Certification of the National DNC Class as alleged herein;

B. Certification of the Internal DNC Class as alleged herein;

C. Certification of the Robocall Class as alleged herein;

D. Appointment of Plaintiffs as representative of their respective Classes;

E. Appointment of the undersigned as counsel for the Classes;

F. Damages to Plaintiffs and members of the Class pursuant to 47 U.S.C. § 227(c)(5) and (b)(3);

G. Injunctive relief for Plaintiffs and members of the Classes, pursuant to 47 U.S.C. § 227(c)(5) and (b)(3), preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry, with the provision of inaccurate or unlawful caller ID information, and using prerecorded voices or messages, except for emergency purposes, in the future;

H. Attorneys' fees and costs, as permitted by law; and

I.	Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 4th day of March, 2026.

        Plaintiff,
        By Counsel

        */s/ Andrew Roman Perrong*
        Andrew Roman Perrong, Esq.
        D. Ct. # CT31815
        Perrong Law LLC
        2657 Mount Carmel Avenue
        Glenside, Pennsylvania 19038
        Phone: 215-225-5529 (CALL-LAW)
        Facsimile: 888-329-0305
        a@perronglaw.com
        *Attorney for Plaintiff and Proposed Class*