**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **ANTHONY WHITFIELD and ROCHELLE RIBEIRO WHITE,** individually and on behalf of all others similarly situated, | Case No. 3:26-cv-00324-KAD |
| *Plaintiffs*, | **CLASS ACTION** |
| | **JURY TRIAL DEMANDED** |
| *v.* | |
| **MEDGUARD ALERT, INC.,** | |
| *Defendant.* | |

**Plaintiff's Response in Opposition to Defendant's Motion to Dismiss**

**INTRODUCTION**

Defendant's Motion to Dismiss should be denied in its entirety. Plaintiffs plausibly allege that Defendant engaged in unlawful telemarketing practices prohibited by the Telephone Consumer Protection Act ("TCPA"), including placing automated telemarketing calls to cellular telephones despite registration on the National Do Not Call Registry, utilizing artificial or prerecorded voice technology, and transmitting inaccurate or misleading caller identification information. Defendant's motion largely ignores the detailed factual allegations contained in the Complaint and instead attempts to impose pleading requirements far beyond those contemplated by Rule 8. Defendant's arguments regarding the absence of a private right of action for violations of 47 C.F.R. § 64.1601(e) are contrary to the growing and nearly unanimous body of recent federal authority recognizing such claims under 47 U.S.C. § 227(c). Likewise, Defendant's assertion that Plaintiffs failed to plausibly allege the use of an artificial or prerecorded voice disregards well-established authority holding that detailed technical allegations are unnecessary at the pleading stage. Next, Plaintiffs have adequately alleged entitlement to injunctive relief

1

where Defendant's ongoing pattern of unlawful telemarketing conduct presents a real and continuing risk of future harm. And finally, Defendant's contention that Whitfield must have received more than one violative call fails on both the law and the facts. Accepting the Complaint's factual allegations as true, as this Court must at this stage, Plaintiffs have more than plausibly stated claims for relief under the TCPA. Accordingly, Defendant's Motion to Dismiss should be denied.

## BACKGROUND

Plaintiffs filed this action alleging that Defendant engaged in unlawful telemarketing practices in violation of the TCPA. Compl. ¶ 1, ECF No. 1. Plaintiff Rochelle Ribeiro White alleges that her residential cellular telephone number has been listed on the National Do Not Call Registry since at least December 9, 2025. Compl. ¶ 22, ECF No. 1. Plaintiff White further alleges that she never consented to receive telemarketing calls from Defendant and was never a customer of Defendant. Compl. ¶ 23, ECF No. 1. Plaintiff White alleges she received an automated telemarketing call on October 11, 2025 from caller ID number (401) 325-5279, which she rejected. Compl. ¶ 24, ECF No. 1. Plaintiff White further alleges that on October 14, 2025, she received another automated telemarketing call from caller ID number (401) 325-7149 during which "an artificial intelligence robot asked her a series of questions regarding purchasing a medical alert device." Compl. ¶ 26, ECF No. 1. Plaintiff White alleges that she was thereafter transferred to a human representative identifying himself as "Alex Robinson," who confirmed he was calling from Defendant's company and attempted to sell her a medical alert device. Compl. ¶ 27, ECF No. 1.

Plaintiff Anthony Whitfield alleges that his residential cellular telephone number has been listed on the National Do Not Call Registry since September 17, 2025. Compl. ¶ 32, ECF

No. 1. Plaintiff Whitfield alleges that he never consented to receive telemarketing calls from Defendant and was never Defendant's customer. Compl. ¶ 33, ECF No. 1. The Complaint alleges that Plaintiff Whitfield received an automated telemarketing call from caller ID number (267) 927-4875 on October 8, 2025. Compl. ¶ 34, ECF No. 1. Plaintiff Whitfield further alleges that on October 27, 2025 he received another automated telemarketing call from caller ID number (267) 927-8846 during which he spoke with an individual identifying herself as "Mia." Compl. ¶ 36, ECF No. 1. During that call, Plaintiff Whitfield was provided a callback number of (800) 716-1433, which connects to Defendant and is listed on Defendant's website. Compl. ¶¶ 36-37, ECF No. 1.

Plaintiffs further allege that the caller ID numbers used during the calls were spoofed and transmitted inaccurate caller identification information. Compl. ¶¶ 25, 28, 35, 38-42, ECF No. 1. The Complaint alleges that the spoofed numbers either were not assigned to subscribers or did not permit consumers to make do-not-call requests during regular business hours. Compl. ¶ 42, ECF No. 1.

Plaintiffs allege that the calls were made for the purpose of marketing and selling Defendant's medical alert systems and that the calls were unwanted, nonconsensual, and made without prior express consent. Compl. ¶¶ 43-46, ECF No. 1.

**STANDARD**

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair

notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## ARGUMENT

I.     **PLAINTIFFS MAY PURSUE THEIR CLAIM BASED ON DEFENDANT'S FAILURE TO TRANSMIT ACCURATE CALLER IDENTIFICATION INFORMATION**

In contending that there exists no private right of action for the caller ID regulations codified at 47 C.F.R. § 64.1601(e), Defendant fails to address federal courts that rejected the same arguments recently, *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 575 (E.D. Pa. 2025) and *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 375 (E.D. Mich. 2025). In *Selectquote*, the Eastern District of Michigan undertook a comprehensive analysis of the genesis of the private right of action for caller ID claims under 47 C.F.R. § 64.1601(e) *Selectquote*, 773 F. Supp. 3d at 375. *Selectquote* represents the most comprehensive analysis of Section 1601(e) undertaken by a Court to date, and its reasoning was adopted in full by the *Newell* Court.

Since *Selectquote*, *every single court* to consider a Section 64.1601(e) caller ID claim has held that there is a private right of action for violations thereof, including in the District of Oregon, where the Court held as wrongly decided a previous opinion holding that there was no private right of action. *Newell*, 791 F. Supp. 3d 571; *Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370, at *7; *Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265, at *11 (E.D. Mich. Sept. 17, 2025); *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at *5 (W.D. Wash. Oct. 9, 2025); *Dobronski v. Daraujo*, No. CV 25-10169, 2025 WL 3908484, at *8 (E.D. Mich. Dec. 1, 2025), *report and*

*recommendation adopted*, No. 25-10169, 2025 WL 3708891 (E.D. Mich. Dec. 22, 2025); *Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. 3:25-CV-05671-TMC, 2026 WL 25742, at *5 (W.D. Wash. Jan. 5, 2026); *Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609, at *6 (D. Or. Feb. 23, 2026) ; *Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 770036, at *7 (D. Mass. Mar. 18, 2026); *Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 752181, at *4 (D. Mass. Mar. 17, 2026); *Carr v. Humana Inc.*, No. 3:25-cv-00476-DJH, ECF No. 28 (W.D. Ky. Mar. 23, 2026); *Dobronski v. Uppleger*, No. 25-10168, 2026 WL 905121, at *10 (E.D. Mich. Mar. 31, 2026).

*Selectquote* and its progeny have thoroughly addressed and rejected the reasoning adopted by the citations relied on by Defendant, including *Worsham*, and the other *Dobronski* cases. This Court should continue to adopt the same reasoning embraced *every other* Federal Court to have addressed the issue post-*Selectquote.* To see why the Defendant's authorities got it wrong, and to understand the trend of courts holding that it is right to hold that Section 1601(e) has a private right of action, one must consider its genesis. As the *Newell* Court explained:

> In my view, *Worsham* misunderstands the structure of the statute. In § 227(c), Congress explicitly delegated to the FCC the authority to evaluate different methods and procedures to protect privacy rights – including network technologies – and issue appropriate regulations. If § 64.1601(e) is promulgated as a "method or procedure" to "protect residential telephone subscribers' privacy rights," it fits under § 227(c) and a private cause of action exists. And the administrative record establishes that the FCC viewed caller ID as a "network technology" that Congress *required* the FCC to evaluate as a method and procedure to protect consumer privacy under § 227(c). Thus, caller ID fits into § 227(c), even if (c) does not mandate that the FCC adopt technological methods and authorizes non-technological methods and procedures as well. *See also Dobronski*, 773 F.Supp.3d 373 (concluding, on a motion for reconsideration, that § 64.1601(e) was promulgated under § 227(c), and rejecting *Worsham*'s technology-focused arguments).
>
> Further, § 227(d) only applies to telemarketing made using specific technologies – fax machines, automatic telephone dialing systems, and artificial and prerecorded voice messages – whereas § 64.1601(e) applies to a broader range of telemarketing calls, including traditional manually dialed telemarketing calls. The Third Circuit has cautioned that "our starting point [in regulatory interpretation] is to attempt reconciliation of

5

seemingly discordant statutes and regulations." *LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 623 (3d Cir. 1989). It is difficult to discern how § 64.1601(e) could have been lawfully promulgated under § 227(d) without exceeding the FCC's delegated authority. Section 64.1601(e) thus fits best under § 227(c), not (d).

*Worsham* does not grapple with these issues, but attempts instead to have § 64.1601(e) straddle two sections of the statute, an outcome for which I can discern no legal authority. The regulation fits comfortably within § 227(c), which supports the existence of a private right of action.

*Newell*, 791 F. Supp. 3d at 579. The issue with all the authorities Defendant cites is that they did not consider under which section of the TCPA the subject regulation, 47 C.F.R. § 64.1601(e), was promulgated, nor did they reach their conclusion independently. Instead of tussling with the statute and analyzing it, as in *Selectquote* and its progeny, each of the authorities Defendant cites simply rested on persuasive authority from other courts which themselves relied on faulty and underdeveloped reasoning and did not engage in extensive analysis as to the precise genesis of this right of action, which is 47 U.S.C. § 227(c). Defendant's authorities largely reflect a kind of jurisprudential echo chamber, with courts repeating inherited conclusions rooted in underdeveloped, faulty reasoning that federal courts only first started to begin to correct after *Selectquote*. As best Plaintiffs can discern, *Selectquote* was the first court to engage in such analysis, which the *Newell* and subsequent courts credited.

As a codified federal regulation dealing with "telemarketing," and with explicit references to the definitions promulgated under the TCPA in 1991 in 47 C.F.R. § 64.1200(f)(13), this particular regulation must have been promulgated under *some* part of the TCPA. "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). In this regard, only a handful of subsections of the TCPA allow for the promulgation of regulations:

6

> • § 227(b)(2) authorizes the FCC to implement requirements that relate to the use of prerecorded voices and automatic telephone dialing systems;
>
> • § 227(c) authorizes the FCC to promulgate rules relating to the "need to protect residential telephone subscribers' privacy rights";
>
> • § 227(d)(1)–(3) allow regulations relating to technical and procedural standards related to fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message";
>
> • § 227(e)(3) provides for regulations relating to misleading or inaccurate caller ID; and
>
> • § 227(i) allows for the FCC to promulgate regulations to streamline information sharing with the FCC related to violations

*Selectquote*, 773 F. Supp. 3d at 376. As the Court observed in *Selectquote*, all but § 227(c) are quickly eliminated as not even remotely applicable to the statutory provision here. The statutory provision at issue here could not have been promulgated pursuant to Section 227(d), because that Section relates only to fax machines and automatic telephone dialing systems, not to telemarketing calls in general, just as Section 227(b), which is inapplicable for identical reasons. Section 227(e)(3), though it deals with Caller ID, was enacted *after* § 64.1601(e), so that's out. And, finally, the transmission of accurate caller ID name has nothing to do with information sharing with the FCC relating to violations contained in Section 227(i). *Id.*

Both the decisions in *Newell* and *Selectquote* are supported by the legislative history under which the instant subsection was enacted. The subject regulation here, 47 C.F.R. § 64.1601(e), was promulgated in 2003 under rulemaking Congress explicitly authorized when it passed the Do Not Call Implementation Act of 2003, 15 U.S.C. § 6153 ("2003 Act"), which related to *consumer privacy*, the mainstay of Section 227(c).

Pursuant to that mandate, the FCC began a rulemaking proceeding that expressly sought comment on whether "network technologies have been developed over the last decade," and which ultimately resulted in an order promulgating the implementation and incorporation of the instant caller ID legislative rule, as well as Do Not Call Registry rules. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-

7

278, Report and Order, 18 FCC Rcd. 14014, 14118. As the FCC explained in that 2003 TCPA Order rulemaking proceeding, "The new rules will also require all companies conducting telemarketing to transmit caller identification (caller ID) information, when available, and prohibits them from blocking such information." *Id.* at 14017. "[T]he 2003 FCC [TCPA O]rder applies to section 227(c). . . . Therefore, Radvansky may bring a case." *Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1321, 1321 n.3, n.4 (N.D. Ga. 2024).

And contrary to Defendant's contention that the FCC was silent when it promulgated Section 1601(e), in the same document it used to create the Do Not Call regulations, the FCC *explicitly tied* the Caller ID requirements at issue here to the TCPA's private right of action in Section 227(c), reasoning that "Caller ID requirements will improve the ability of consumers *to identify and enforce* do-not-call rights against telemarketers. . . . Consumers are frustrated by the failure of many telemarketers to transmit caller ID information, which, under certain circumstances, *makes it difficult for consumers to enforce* the TCPA." *Id.* at 14068, 14118 (emphasis added). The 2003 TCPA Order references Section 227(c) no fewer than *54 times* and only one other section, Section 227(d), only *once*, in the context of a 1997 regulation requiring fax broadcasters to print their information on fax messages. *Id.* at 14134. It references no other section of the TCPA as authority for the regulations it promulgated.

The FCC appropriately concluded that, pursuant to its authority *under Section 227(c) of the TCPA*, "the caller ID requirements at 47 C.F.R. § 64.1601(e) will go into effect on January 29, 2004." *Id.* at 14143. There can be no question that the FCC promulgated the instant regulation under its authority under Section 227(c) of the TCPA, which required the FCC to promulgate privacy regulations.

Section 64.1601(e) serves precisely the consumer protection functions Congress

8

mandated in Section 227(c). It ensures that consumers receiving telemarketing calls know the identity of the telemarketer, enabling them to lodge do not call requests and exercise the very privacy rights § 227(c) was enacted to protect. It would be incongruous to hold that the same FCC order created a private right of action for the DNC requirements but somehow failed to create one for the caller ID requirements adopted in the same rulemaking under the same statutory authority. *See Weingrad*, 2026 WL 496609, at *5–6. Both are consumer privacy regulations. Both were promulgated under § 227(c). Both are enforceable under § 227(c)(5).

Executive agencies do not create regulations absent an explicit authorization from Congress. *Bowen*, 488 U.S. at 204. Defendant's implicit assumption that the FCC can create § 64.1601(e) without a statutory home is contrary to *Bowen* and its progeny, including *Alexander v. Sandoval*. ("[W]hen a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.") 532 U.S. 275, 291 (2001). Given that courts presume that agencies act lawfully and given that the instant regulation must rest on *some* subsection of § 227, once subsections (b), (d), (e), and (i) are eliminated, only (c) is left standing. And § 227(c) explicitly permits not only the FCC to implement "regulations to implement methods and procedures for protecting the privacy rights described in such paragraph," 47 U.S.C. § 227(c)(2), but also explicitly imparted consumers with a private right of action to enforce the "regulations prescribed under this subsection," 47 U.S.C. § 227(c)(5), precisely as envisaged by the Supreme Court in *Alexander* when it speaks of a "general authorization for private enforcement of regulations" that Congress explicitly authorized.

9

What's more, the Caller ID claims here apply by the very terms of the subject regulation, regardless of whether or not either Plaintiff's number was on the Do Not Call Registry or not, or how many calls were received while the Plaintiffs were on the Registry.

MedGuard invokes the same faulty *Worsham* line of reasoning that the *Selectquote* Court addressed at length. And, as indicated above, since *Selectquote*, no court has adopted the same faulty line of reasoning adopted by pre-*Selectquote* courts. All those courts impermissibly severed the subject regulation, promulgated under § 227(c), from the § 227(c)(5) private right of action Congress provided. That position cannot be reconciled with *Alexander*, *Bowen*, and the litany of other courts to have addressed the issue post-*Selectquote*. If the regulation was promulgated under § 227(c), as it must have been, then it is enforceable through § 227(c)(5). The tide has shifted definitively. This Court should continue to adopt the precedent set by every Court to have considered the issue from that point.

## II.    THE COMPLAINT PLAUSIBLY ALLEGES THE USE OF A PRERECORDED OR ARTIFICIAL VOICE

Defendant further argues that Plaintiffs failed to adequately plead the use of a prerecorded or artificial voice. "Among other things, the TCPA generally makes it illegal to place what are colloquially known as 'robocalls' to someone's home phone or cell phone, subject to differing rules depending on which type of phone number is called." *Loyhayem v. Fraser Fin. & Ins. Servs., Inc.*, 7 F.4th 1232, 1233 (9th Cir. 2021). The statutory provision which applies to calls made to cell phones, as is relevant here, provides in pertinent part: "It shall be unlawful for any person ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a ... cellular telephone

10

service." § 227(b)(1)(A)(iii). And, the TCPA provides a private right of action for individuals to receive $500 in damages for each violation, plus treble damages if the violation was willful or knowing. § 227(b)(3).

Under the TCPA, it is unlawful "for any person ... to make any call [other than for emergencies or with the recipient's prior express consent] using … an artificial or prerecorded voice" to a cell phone. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA does not define the term artificial or prerecorded voice. *Mina v. Red Robin Int'l, Inc.*, No. 20-CV-00612-RM-NYW, 2022 U.S. Dist. LEXIS 104423, 2022 WL 2105897, at *7 (D. Colo. June 10, 2022).

"A TCPA claim survives a motion to dismiss if the plaintiff describe[s] anything about the circumstances of a call or message contributing to [her] belief it was pre-recorded." *Slominski v. Globe Life Inc.,* 2024 U.S. Dist. LEXIS 24378, *16 (E.D.N.C.). Indeed, "Courts have denied motions to dismiss in cases brought under the TCPA in which plaintiffs have alleged that they received prerecorded calls and that the contents of the call were identical." *Rose v. New Tsi Holdings, Inc.*, No. 21-CV-5519 (JPO), 2022 U.S. Dist. LEXIS 56525, 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022) (citing *Dendy v. Chartrand*, No. 18-CV-1118-WPJ, 2019 U.S. Dist. LEXIS 26778, 2019 WL 719762, at *3 (D.N.M. Feb. 20, 2019) (denying motion to dismiss "because the calls contained prerecorded messages" and "contained the same message")).

A plaintiff sufficiently pleads a pre-recorded message claim under the TCPA when the allegations supply details beyond bare legal conclusions or the recitation of statutory language, such as the frequency of the calls and their content. *Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 29348, at *4-5 (D.N.J. Mar. 7, 2016). Courts have recognized the following averments to be indicative of a prerecorded call: "1) a delay before hearing the message, 2) calls ending with a beep, 3) instructions to call a 1-800 number, 4) an unusual phone

number or short code instead, 5) a robotic voice on the other end, or 6) the absence of anything specific to the person being called." *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 U.S. Dist. LEXIS 62115, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022); *see also Smith v. Pro Custom Solar LLC*, No. CV1920673KMESK, 2021 U.S. Dist. LEXIS 8616, 2021 WL 141336, at *2-3 (D.N.J. Jan. 15, 2021).

The Complaint, however, contains far more than conclusory allegations. The Complaint specifically alleges that Plaintiff White received a call during which "an artificial intelligence robot asked her a series of questions regarding purchasing a medical alert device" before she was transferred to a live human representative. Compl. ¶ 26, ECF No. 1. The Complaint further alleges that the calls were "automated telemarketing" calls. Compl. ¶¶ 24, 26, ECF No. 1. Defendant improperly attempts to impose a heightened evidentiary burden requiring Plaintiffs to provide detailed technical descriptions of the prerecorded system used during the calls. Rule 8 imposes no such requirement. These facts are more than sufficient to put Defendant on notice of the claims against it. *See e.g.*, *Neptune v. Whetstone Partners, LLC*, 34 F.Supp.3d 1247, 1250 (S.D. Fla. 2014) (finding sufficient allegations that calls were prerecorded where *inter alia* Defendant called Plaintiff on numerous occasions several times per day, with generic content messages such as a prerecorded voice reminding Plaintiff that his payment was due); *Sojka v. DirectBuy, Inc.,* 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014) ("The complaint describes in detail five voicemails left for the Sojkas by DirectBuy from August 2012 to November 2012."). Indeed, the Court in *Abramson v. AP Gas & Elec. (PA), LLC*, Civil Action No. 22-1299, 2023 U.S. Dist. LEXIS 18996, at *8 (W.D. Pa. Feb. 6, 2023) also found that "Abramson alleges that he received a call that started with the following pre-recorded message….This allegation sufficiently alleges that the caller used a prerecorded message.").

The Complaint also plausibly alleges that Defendant utilized artificial or prerecorded voice technology as part of an automated telemarketing system designed to market Defendant's medical alert products. Compl. ¶¶ 24-27, 43-47, ECF No. 1. Those allegations are more than sufficient to permit discovery into the precise telemarketing technology used by Defendant. Plaintiff White specifically identified the presence of an "artificial intelligence robot" that asked scripted questions before routing the call to a human salesperson. Compl. ¶ 26, ECF No. 1. At the pleading stage, Plaintiffs are entitled to all reasonable inferences arising from those allegations.

### III.    INJUNCTIVE RELIEF IS PARTICULARLY WARRANTED HERE, AS THERE IS A REAL RISK OF FUTURE HARM.

MedGuard also moves pursuant to FED. R. CIV. P. 12(b)(1) to dismiss the Plaintiffs' claims for injunctive relief, arguing that the Plaintiffs lack Article III standing to obtain injunctive relief. In this regard, the only jurisdictional challenge attacks the Plaintiffs' standing to seek injunctive relief on the specious basis that the Plaintiffs have not adequately pled a risk of future injury. But in this regard, Defendant raises a mere facial challenge, not a factual one, because Defendant simply argues that the pleadings have not shown any risk of future injury. Yet Plaintiffs' allegations do establish a risk of future injury.

MedGuard has, to put it charitably, a compliance problem. Other than this lawsuit, it is being sued for nearly identical conduct in both this District and other federal courts.[1] *E.g.*, *Mey v. MedGuard Alert Inc.*, No. 5:26-cv-00088 (N.D. W. Va.); *Landy v. MedGuard Alert, Inc.*, No.

---

[1] Even on a facial challenge, as here, this Court can take judicial notice of the fact that other publicly-filed lawsuits have been filed against the Defendant, together with the contents of those complaints, as matters of public record. *See OMT Addiction Centers, LLC v. Freedom Healthcare Props. of Texas, LLC*, 770 F. Supp. 3d 1090, 1102 (M.D. Tenn. 2025).

3:26-cv-00122 (D. Conn.); *Connor v. MedGuard Alert, Inc.*, No. 3:25-cv-02162 (D. Conn.); *Salaiz v. MedGuard Alert Inc.*, No. 3:25-cv-00326 (W.D. Tex.); *Mathine v. MedGuard Alert, Inc.*, No. 3:24-cv-01940 (D. Conn.). Despite being named in at least six TCPA lawsuits in the span of two years alleging practically not only the same conduct but also the same calls, MedGuard still has not apparently taken any steps to comply with the TCPA, nor ceased sending the highly illegal prerecorded calls that Plaintiffs here, and those in the aforementioned cases, complain of.

And, as telephone users, the Plaintiffs are at risk of future telemarketing calls from Defendant. Defendant offers no facts or arguments rebutting the risk that they will make similar calls in the future nor do they even claim to have ceased making such calls. As the cases above reflect, that would be a lie. Further, Plaintiffs are not required to allege future harm under the TCPA's statutory injunctive relief:

> The Telephone Consumer Protection Act, 47 U.S.C. § 227 (b)(3), creates a private right of action and allows a Court to order injunctive relief, monetary relief, and treble damages. Plaintiff is not seeking a preliminary injunction, which would require a showing of likelihood of success on the merits and irreparable harm. Defendant argues that Plaintiffs allegations do not suffice to establish either prong, and are inadequate to state a claim for treble damages.
>
> In *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004), the Eleventh Circuit differentiated statutory and non-statutory injunctions. It specified that where a statute bans certain conduct or establishes certain rights, a court may grant an injunction to enforce the statute. Where plaintiff sufficiently alleges a claim for a statutory violation, that is all that is required to request injunctive relief in a complaint. To request treble damages, the Plaintiff must allege a willful violation. Here, Defendant argues the Plaintiff does not sufficiently allege the traditional elements for injunctive relief or for an award of treble damages. Because the Plaintiff need not allege the traditional elements for injunctive relief, the Court denies the motion on that issue.

*Gutierrez v. Fla. Advert. & Mktg. Corp.,* 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019). The Court in *Abramson v. AP Gas & Elec. (PA), LLC*, Civil Action No. 22-1299, 2023 U.S. Dist. LEXIS 18996, at *14-15 (W.D. Pa. Feb. 6, 2023) denied a similar motion to dismiss:

> Here, along with allegations that AP Gas is aware of the requirements of the TCPA,

> Abramson alleges the elements of a TCPA claim to satisfy a demand for injunctive relief: (1) ongoing telemarketing by AP Gas using automated calls to send prerecorded messages; (2) Abramson's receipt of at least eleven prerecorded calls from AP Gas between August 9 and 18, 2022, without his consent; and (3) injury in the form of disturbed solitude and annoyance as well as being temporarily deprived of the use of his phone. These allegations adequately place him within the zone of interests protected by the TCPA and allege a pattern and practice by AP Gas of violating the TCPA. These allegations are accepted as true and permit an inference of future violations that the TCPA seeks to enjoin.

This Court should do the same.

The cases on which Defendant relies for dismissal of Plaintiffs' injunctive-relief request are inapposite. Each involved isolated communications, not the coordinated pattern of conduct and pattern of non-compliance alleged here. In *Martin*, for example, the plaintiff alleged receipt of a single robocall. And in *Blair*, the course of conduct spanned only a week. None of those plaintiffs alleged what Plaintiffs allege here: a coordinated  telemarketing campaign that has generated at least six federal lawsuits against the same Defendant for materially identical TCPA conduct over the past two years.

Plaintiffs' standing allegations are also categorically different because of the nature of Defendant's unlawful conduct itself. Plaintiffs allege that Defendant used inaccurate caller ID information. The harm is therefore ongoing and structural, since Plaintiffs face a continuing, concrete risk of receiving further unlawful calls precisely because Defendant's chosen telemarketing methods defeat the self-help remedies and accurate caller identification 47 C.F.R. § 64.1601(e) was promulgated to facilitate. That is itself the "real or immediate threat of injury" *Nicosia* requires. *See* 834 F.3d 220, 238-40 (2d Cir. 2016). It is also more than a past exposure to remediated illegal conduct because the very mechanism of the alleged Caller ID violations guarantees recurrence absent injunctive relief. Defendant offers no representation that it has ceased the conduct, no change in its telemarketing practices, and no facts whatsoever rebutting the inference of continuing risk. Dismissal of Plaintiffs' request for injunctive relief at the

pleadings stage would therefore be premature.

**IV.    THE COMPLAINT PLAUSIBLY ALLEGES THE RECEIPT OF MORE THAN ONE CALL**

MedGuard relatedly argues that the Plaintiff Whitfield fails to allege that he received more than one telephone solicitation within a twelve-month period. But as the Plaintiff explains, he received multiple calls. The Court's analysis can end there. The Plaintiff has unquestionably pled that he received multiple calls from the same entity, the Defendant, within a twelve-month period, to his number on the National Do Not Call Registry, precisely as the statute requires. 47 U.S.C. § 227(c)(5).

As a further matter, MedGuard's argument relies on a faulty reading of the statute that injects a requirement that is not there, and thus relies on an unsupported legal premise. Start with the faulty reading of the statute. MedGuard's reading adds words Congress didn't use. The subject provision, 47 U.S.C. § 227(c)(5), provides a right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection."  The statute sets out two distinct conditions, a numerosity gate – "more than one telephone call" from the same entity within 12 months, and a violations gate – at *least one* call in "violation of the regulations" under § 227(c). Nothing in the text says both (or all) of the calls must be violations, or that each call must violate the TCPA in the same way. As outlined above, all the calls violated the TCPA's caller ID provisions, and at least one violated the TCPA's Do Not Call Registry provisions. If Congress had intended the threshold to be "more than one *violative* call," it knew how to say so. No part of that language requires that more than one of the telephone calls must *violate* the "regulations prescribed." Were that the case, the statute would be worded differently, making clear that a person must receive "more than one *violative* telephone call."

16

MedGuard reads this requirement of a "violative" call into the statute when it is not there, which runs contrary to multiple canons of construction, including the surplusage canon, and the omitted case canon, which forbids adding a requirement Congress did not enact. All the statute requires is that the Plaintiff receive "more than one telephone call." The statute does *not* say that (arguably) non-violative calls cannot count toward this requirement. They unquestionably can, and MedGuard cites no case holding otherwise. *See Gibbs v. SolarCity Corp.*, 239 F. Supp. 3d 391, 397 (D. Mass. 2017). Each requirement is an *independent*, not an interdependent, requirement. Were each requirement interdependent, it would run contrary to the statutory damages hook, which clearly provides recovery for one call.

The syntactic structure supports Whitfield's reading. As an initial matter, the structure fits § 227(c)(5)(B)'s remedial hook, as that section permits an action to recover a loss "from such *a* violation," singular, not plural, and damages are awarded "for each such violation." "[M]ore than one telephone call . . . by or on behalf of the same entity" states the numeric and source condition, and the postpositive modifier "in violation of the regulations" describes the actionable conduct within that series, without converting the numeric threshold into a "two violations" prerequisite. Grammatically, the phrase is not a neat, parallel series. Rather, it is a complex noun phrase ("more than one telephone call within any 12-month period by or on behalf of the same entity") followed by a postpositive modifier ("in violation of the regulations").

Where there is no straightforward series, the nearest reasonable referent canon warns against stretching a modifier to silently change earlier quantitative terms. The ordinary reading is that the numerosity requirement ("more than one") stands on its own, and the violation clause identifies the wrongful conduct that makes the call(s) actionable. The remedial hook supports this conclusion. Congress set a threshold of *calls* (not violations), then measures damages per

17

violation once that threshold is crossed. Congress explicitly allowed recovery for even a single violation. Reading the statute to require two violations would erase the gatekeeping function (the "more than one call" prerequisite) by collapsing it into the violation element and would render "each such violation" needlessly redundant, in addition to contradicting the remedial hook under subsection (c)(5)(B).

Congress often uses a repeat-status gate to screen out certain cases and then ties liability or damages to each violation that occurs once the gate is crossed. This is most often seen in recidivist schemes, such as under the Gun Control Act. For example, in determining a sentence enhancement under 18 U.S.C. § 922(g), the Second Circuit has held that the fact of a prior conviction is not a separate element of the offense but is merely only a conditional threshold relevant to sentencing. *United States v. Santiago*, 268 F.3d 151, 154 (2d Cir. 2001). Once the government proves the repeat-status predicate, it can obtain an enhancement if it proves a present violation and need not prove two such violations. *Id.* at 155-56. So too here. The statute has a numerosity gate and a violations gate. Reading the numerosity gate to demand two violating calls collapses distinct clauses, contrary to how courts read recidivist/threshold statutes. Put another way, consider a gym that posts a sign, "Anyone who has visited this facility more than once this month and violates the dress code will be fined." A patron need not break the dress code twice. The repeat visit requirement and violation requirement are two separate, independent conditions.

Second, MedGuard relies on an unsupported legal premise. The Complaint does not allege that Mr. Whitfield merely *attempted* to register his number on September 17, 2025, and then waited for the government to process that request. It alleges that his number "has been listed on the National Do Not Call Registry since September 17, 2025, which was prior to the calls at issue" and that Defendant nevertheless placed telemarketing calls to him on October 8 and

18

October 27. Taking those allegations as true, as the Court must at the Rule 12(b)(6) stage, Defendant was required by operation of law to honor that registration.

The Complaint alleges that Whitfield's number was listed on the National Do Not Call Registry before both calls. Defendant's 31-day safe harbor argument is not an element of Whitfield's claim. It is, at most, part of a regulatory safe harbor that Defendant must prove through evidence of its routine business practices. 47 C.F.R. § 64.1200(c)(2)(i). Nothing on the face of the Complaint establishes those facts. The safe harbor does not excuse Do Not Call Registry compliance during the thirty one day safe harbor time, and in fact, only applies to a *safe harbor*, not an *actual requirement to state a claim* for violations of the TCPA's Do Not Call Registry provisions. But MedGuard hasn't even provided any evidence that Whitfield was not on the "version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made," as the relevant safe harbor requires.

Defendant's attribution argument asks the Court to isolate each call and draw inferences against Whitfield. But the Complaint alleges a single telemarketing campaign using spoofed local numbers, inaccurate CNAM information, and calls marketing MedGuard's medical alert systems. At this stage, those allegations plausibly support the inference that both Whitfield calls were made by or on behalf of MedGuard. Nor does the statute, by its plain text, require both calls to be *answered*. All is requires is *receipt*. That notwithstanding, Plaintiff has connected all the calls to the same source since they both spoofed the same exact NPA NXX combination. A ten thousands block (NPA-NXX-XXXX) contains exactly 10,000 numbers (267-927-0000 through 267-927-9999). Both -4875 and -8846 fall squarely in it. There are roughly 5.5 to 6 billion assigned or assignable 10-digit U.S. telephone numbers across all valid NPA-NXX combinations. A "spoofer" picking numbers at random to impersonate thus has an enormous pool

to draw from. Thus, the probability that two independent, unrelated bad actors, selling the same services, would each independently land in the same ten thousands number block, which represents roughly 0.00017% of the available number space, by coincidence, is: $P = 10,000/6,000,000,000$, or roughly one in a million. One has approximately the same chance of being struck by lightning, which has a probability of approximately 1 in 1.5 million.

In practice, an actor spoofing its number simply does not pick a number at random: it chooses a telephone exchange (like 267-927) and simply change its computer programming code to alter the last four digits in this block, usually sequentially. This makes it easy to pinpoint the same block call to a common origin, and makes coincidence an implausible explanation. The evidence connecting the two calls Plaintiff received from the same 267-927-XXXX numbers is nested. The calls came from the same area code, exchange, and ten thousands block, less than a month apart. Both caller IDs were false, but false in the same highly specific way. In any event, Defendant is trying to convert a factual merits question into a pleading defect.

The governing text leaves no room for Defendant's theory. The applicable Do Not Call regulation provides that "[n]o person or entity shall initiate any telephone solicitation" to a residential subscriber whose number *is on* the national do-not-call registry. 47 C.F.R. § 64.1200(c)(2). It says *nothing* of how long the number must be on the Registry. Defendant's citation to a so-called "31 day" rule applies in the context of a TCPA *safe harbor*, *not* the text of the regulation itself. That safe harbor exempts from liability a person making telephone solicitations to a number on the Do Not Call Registry if it can establish (1) that the violation was a result of error and (2) that, as part of a routine business practice, it meets five enumerated standards. 47 C.F.R. § 64.1200(c)(2)(i)(A-E). One of these standards requires callers to employ "a version of the national do-not-call registry obtained from the administrator of the registry no

20

more than 31 days prior to the date any call is made, and maintains records documenting this process." 47 C.F.R. § 64.1200(c)(2)(i)(D).

As an initial matter, the presence of a *safe harbor*, of which the Defendant will bear the burden of proof at trial, is fatal to dismissal of the present claims at the 12(b)(6) stage because the TCPA itself makes this an *affirmative defense*, not an element of Plaintiff's claim. A plaintiff need not "anticipate or overcome affirmative defenses" in a complaint, and that dismissal on an affirmative defense is proper only where the defense is apparent on the face of the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014). Defendant is thus trying to invert the pleading rules. It asks the Court to presume an affirmative defense applies, at the pleadings stage, based on a barren record and then dismiss because Whitfield did not negate that defense in advance. That is not grounds for dismissal under Rule 12(b)(6), since "[l]itigants need not try to plead around defenses." *Id.* The statutory safe harbor, even if properly invoked, does not apply. And even if it did apply, the statute doesn't say what Defendant thinks it says.  Defendant's motion to dismiss on this basis should be denied.

### Conclusion

For all the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety. Plaintiffs have more than adequately alleged violations of the TCPA arising from Defendant's unlawful telemarketing practices, including the use of artificial or prerecorded voice technology, the placement of telemarketing calls to numbers listed on the National Do Not Call Registry without consent, and the transmission of inaccurate or misleading caller identification information in violation of 47 C.F.R. § 64.1601(e). At this stage of the proceedings, Plaintiffs are not required to prove their claims or identify the precise technical mechanisms Defendant

21

employed; they need only allege sufficient factual matter to state plausible claims for relief. The Complaint easily satisfies that standard.

Defendant's attempt to foreclose Plaintiffs' caller ID claims is contrary to the growing consensus of federal authority recognizing a private right of action under § 227(c) for violations of § 64.1601(e), including the persuasive and comprehensive analyses set forth in *Dobronski* and *Newell*. Defendant likewise fails to demonstrate any deficiency in Plaintiffs' allegations concerning the use of artificial or prerecorded voice technology, particularly where the Complaint specifically describes an "artificial intelligence robot" that engaged Plaintiff White before transferring her to a live representative. Those factual allegations readily support a plausible inference that Defendant utilized prohibited automated telemarketing technology. An AI robot asking a series of questions is precisely the conduct Congress ruled unlawful, and was very clearly not a human reading a script.

Nor has Defendant established any basis to dismiss Plaintiffs' request for injunctive relief. The Complaint plausibly alleges an ongoing pattern of unlawful telemarketing conduct, supported not only by the calls at issue here but also by the existence of similar lawsuits alleging materially identical TCPA violations against Defendant. Plaintiffs have sufficiently alleged a continuing risk of future harm and are entitled to pursue the statutory injunctive remedies expressly authorized by Congress under the TCPA.

Finally, Plaintiff Whitfield has plausibly pled the receipt of more than one call in a twelve-month period. The statute does not require that each call violate the statute or that they all violate the statute in the same way. So, at minimum, Whitfield's Caller ID claims survive. But even if the statute required the receipt of more than one *violative* call (which it does not),

Whitfield's DNC claims survive, too, because Whitfield's number was on the Do Not Call

Registry prior to his receipt of any of the illegal calls, of which he received more than one while

his number was on the Do Not Call Registry.

To the extent that any questions remain, the Court should grant leave to amend.

RESPECTFULLY SUBMITTED AND DATED this 7th day of May, 2026.

Plaintiff,
By Counsel

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
D. Ct. # CT31815
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com
*Attorney for Plaintiff and Proposed Class*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically

send a copy to all attorneys of record on the case.

May 7, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

23